Good afternoon, your honors, and may it please the court, here representing Mr. Townsend this afternoon, and I'd like to reserve four of my minutes for rebuttal, if I may. Certainly. If I may, please proceed. Thank you. Your honors, the 57-month sentence that was imposed in this case was unreasonable for three reasons. First, it was unreasonable because the sentence didn't include any 3553A factors. Second, the sentence was unreasonable because the district court didn't understand its authority to impose something other than BOP incarceration in this case. And finally, the sentence was unreasonable in this case because the district court found, as a matter of law, that the sentence was greater than necessary to meet the purposes of sentencing in this case. That was because he felt that he was hooked by the substantial assistance in the Williams case. As I understand it, that is correct. That is correct, your honor. Yes. How do you get around it? Well, there's several different ways to get around it, because let me start, I guess, with the issue of that it didn't have to be 57 months that is spent in a BOPFCI facility. And I rely on the Kordsmeyer case for that proposition. And in that case, it used the same terminology, which is term of imprisonment. In that case, the court determined whether or not the 18-month term of imprisonment that was in a C1C plea agreement actually meant that that had to be served in BOP custody. And this court found in that case that, indeed, the court's decision to impose three years in BOP custody and then 15 months in a home confinement or halfway house, in fact, met the standard for the plea agreement. That was a plea agreement, right? Absolutely. But the language that's used, term of imprisonment, is identical whether you look at the guidelines or whether you look at that particular plea agreement. Are you saying that in sentencing under, like, a mandatory minimum sentence, the court can construct a sentence that does not include, you know, if it's 120 months, that doesn't include a prison term? I've not thought about it in terms of a mandatory minimum sentence because there are other factors that, other factors and other case law from this court that kick in at that point, right? The Marshall case that was cited by my opposing counsel makes a differentiation when the district court is stuck at a mandatory minimum term. But isn't that what's involved here, though? Well, the difference is congressional mandate, okay? In a 120-month mandatory minimum term, Congress has mandated that that term of incarceration apply. When we're talking about a guideline sentence, which is what we're talking about in this case, which is a completely different matter, even the guidelines themselves talk about, you know, the guidelines have these zones, zones A, B, C, and D, and it says if you're And it all gives, like, under Section 5 of the guidelines, it talks about 0 to 6 months incarceration all the way up to 360 months to life incarceration. It all looks at it the same way, but the guidelines say, well, if you're in C, you can do this. If you're in D, you can split it this way. And of course, now we know, post-Booker, that even those D, C, B, and A aren't mandatory at this point because the guidelines aren't mandatory. So it's a difference in a mandatory minimum sentence because you don't have that congressional overriding factor. Let me ask you, what Judge Rice wanted to do, and this man's been out of jail now, supposedly rehabilitating or something, for what, four or five years? At least. He's still out of jail as we speak. How many years is that? Well, I believe he pled guilty in 2011, and so at least four years, if not longer. Now, are you saying that home detention, for example, under the guidelines, is a possibility? And if so, have you talked to Mr. Glassman about what seems to be Judge Rice's very strong view that this fellow's going to suffer, that he's been rehabilitated more or less, and that he's going to suffer if he has to go to prison for all this period of time, collateral consequences of his family? And have you tried to work something out with Mr. Glassman? Well, there's two answers to that question. Number one, no. Mr. Glassman and I have not had that discussion, but I don't know that there's ever been a negotiation in the context of an appeal. But don't forget, you know, they settled cases on appeal, too. Yes. Yes. But I will say, for purposes of making sure that the record is clear, there were such discussions at the district court level because the judge kept putting off sentencing in this case and actually... I know that because a lot of things have happened with regard to sentencing in the last two or three months. There's a bill to give the district courts much more leeway now to change mandatory minimums and the way the mandatory minimums work. And so we're not exactly in the same atmosphere that we were five years ago. And I don't know how the Department of Justice is viewing that, but it could be profitable perhaps to try to work your client's interest by discussing it with the Department of Justice. I would be more than happy to have that conversation with them. Well, I'll ask Mr. Glassman whether he'd be open to something there. Mr. Shadd, I want to take you back to this Korsemeyer case that you're relying upon. Yes, Your Honor. It's a per curiam opinion. It's about half of a page, if you were to line it up, with no analysis whatsoever. It's not binding on us. It has a strong dissent from Judge Kethledge. It's a C-1-3 plea agreement, so they're interpreting it in terms of a plea agreement, not a statute. Is this the best you got? Is that all you got? For that particular argument, that is the best that I have. Now, your other arguments, you've got to get around Williams. Sure, absolutely. So we have the fact that there are dozens and dozens and dozens of cases from this court that say that a sentence is substantively unreasonable if the 3553A factors aren't considered. And in this case, we obviously know as a matter of fact that they weren't considered because the district court judge said that he can't consider those 3553A factors in imposing the sentence in this case. So more than that, this judge went on the record, and I think it's on 3412 and 3418, those are the page IDs from the sentencing hearing transcript, where the court actually went on the record and said, I find that this sentence is not sufficient, it is greater  Isn't this a consequence of the rule that when you consider substantial assistance or when you deviate under, what is it, 3553E? When you deviate, the only thing you're allowed to consider is substantial assistance. So that's the consequence. And that is what the Williams case says. Let me take one step back from the Williams case just for a moment and say that as a policy matter, that is the only time, because we know that once the 3553A or 3553E motion is filed, there is no mandatory minimum sentence. We know that. This is the only situation where there's no mandatory minimum sentence where the guidelines become mandatory. And that's the only thing that happens in this case. You're saying Williams is wrong. Well, I do say that in my brief. But we can't overrule Williams right here. I mean, it's being in the bank, and it may be wrong and may not be wrong. Absolutely. But I have another argument, which is that why do you figure it makes the guidelines mandatory? It's still up to the judge to determine what that value was of substantial assistance. And then according to Grant, once the judge finds the value of the assistance, so they find that new guideline range, and in this case it was 57 to 71 months, the court then has the discretion to go anywhere within 57 to 71 months. The court cannot go 72 months. The court cannot go 56 months under Williams and Grant. That makes that guidelines range mandatory. Do you have any other circuits that have come out differently on the question of 3553E that would suggest as a circuit split? No. I mean, you want us to create new law. We're bound by Williams. Well, but you're also bound by Pew. And the Pew is a case from the Supreme Court that came out after Williams. And keep in mind that Williams is a panel decision, not an en banc decision. So if this court reads Pew... We're a panel too, remember? Absolutely. But I cited in my reply brief to a case, I think it's the Ely case from this court that says that if a Supreme Court case overturns a previous panel decision, a panel can then go beyond the prior panel's decision. And how does Pew overturn Williams? Because Pew, either Pew does this or it changed my mind, one of the two, but I'm saying that the Supreme Court and Pew did this. Pew is an ex post facto case. That applies... That doesn't even mention or address mandatory minimums or 3553E. But it does address 3553A and its interplay with the guidelines. And if you look at both Pew and you look at the dissent in Pew especially, and it changes the paradigm at least of how we look at sentencing because the 35... 3553A factors. It's one of the many tools. If you look at Thomas's dissent... I write that the statement you're quoting from isn't even in the conclusory part of the Supreme Court opinion. That's true. It's in the beginning and the background. It is true. Yes. Now, let's say that's dicta. There is cases, as you know, that says that we're also required to follow their dicta. So again, is this the best you got on that one? That is the best I have on that issue. And I see that my time is up, but I'd be happy to answer any other questions. Thank you. Thank you. May it please the court, Ben Glassman on behalf of the United States. Let me address Judge Merritt first. My colleague, Mr. Shadd, and I have an excellent working relationship and I would never say to the court that I have closed ears to anything that Mr. Shadd would bring to my attention. That being said, of course, I wouldn't want to make any representations before this court about what my personal powers are within the Department of Justice. You might have to talk to the criminal division or you may have to talk to the United States attorney. I'm just asking. It seems so clear after four years here and after looking at what Judge Rice thought about this case and his desire to allow this guy to have home confinement or stay in the community so it wouldn't so much interrupt what he seems to have as a good family relationship. So you would be open to talking about it, in other words. I'm always open to talking about it, but I wouldn't want this court to reserve its decision pending. No, are we not? I'm just asking if you—and conditions have somewhat changed here with this newly enacted legislation. It hadn't been enacted, but it's proposed. It may change a lot of things. And it might. That's right, Judge Merritt, and I honestly am not sufficiently familiar with the particulars of that bill, which is over 100 pages in length, to be able to opine on how it might impact this case. Also, as Your Honor is aware, the deputy attorney general has a program for clemency petitions to be addressed to the executive branch, and that's a separate—completely separate from any particular case. So as you can imagine, there are institutional—competing institutional interests within this. The bottom line here is the Williams case is here, and we can't do anything about it. That's right. That's right. And Judge White, to your point, your question to my colleague about mandatory minimums was actually the identical one that I thought of as I was sitting waiting for the argument, that the point about imposing a term of imprisonment, what that means, has nothing to do with the If he was convicted of and facing a 120-month mandatory minimum sentence and their view is correct as to the law, then the judge could have just sentenced him to one day in prison and 10 years of home confinement as a condition of supervised release, and apparently then every case, since we're under a plain-error standard where that sentence has been imposed, would have been obviously wrong, which cannot be right. In fact, the district court here deserves credit because the court didn't want to impose the sentence that he ultimately imposed, but he was intellectually honest and followed the law as he found it, even as he struggled with it. Took it down as far as he could conscientiously do it. Exactly, Judge Merritt. Actually, if you remember your concurrence in the Grant and Bank opinion that said, hey, you know, the amount of the reduction is up to the district judge. It's not up to the Department of Justice. Here we recommended a 10% reduction off of 120 months, and the district court said, well, I'm going to knock it down over 60 months to 57 months, so . . . And you agreed with . . . I mean, you didn't appeal that. That's right. I don't think it is appealable. So, the district court struggled, found the law, and gave Mr. Townsend every benefit of the doubt in terms of the extent of the reduction, but ultimately . . . In order to comply with what Judge Rice conscientiously would like to do, the only way to do that is for the Department of Justice to give some ground on that and think that's the fair thing to do in this situation, and that's all he can do is come talk to you. As you say conscientiously, Judge Merritt, because Judge Rice actually commented during one of the hearings that he could choose to overvalue the substantial assistance to get where he wanted to go, but that would be farcical in his opinion, and I think the court deserves credit for not doing that. Because, as the court says, Williams is the published law of the circuit, as is Grant, and this court is bound to follow it. Unless there are any questions, the United States asks the court to affirm. Thank you. Thank you. Anything else, Mr. Shadd? No, Your Honor. All right. Sometimes it's better to make your argument to the prosecutor. I will definitely do that. All right, thank you. Thank you. Case will be submitted. Please adjourn the court.